UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

FILED
NOV 13 2009
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**WEISBERG LAW, P.C.**
MATTHEW B. WEISBERG
ATTORNEY ID: 85570
REBECCA M. STEIGER
ATTORNEY ID: 200875
7 SOUTH MORTON AVE.
MORTON, PA 19070
610-690-0801

| | |
|---|---|
| Yasmin Mack<br>1306 Cambridge St.<br>Philadelphia, PA 19123 | :<br>:<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| Bear Stearns Residential Mortgage<br>Corporation<br>Corporation Trust Center 1209<br>Orange Street<br>Wilmington, DE 19801 | : CIVIL ACTION NO.: **09  5370**<br>:<br>: JURY OF TWELVE (12) JURORS DEMANDED<br>:<br>: |
| And | : |
| Foreclosure Solutions Specialist, Inc.<br>4699 N. State Rd 7<br>Suite A-1<br>Tamarae, FL  33319 | :<br>:<br>:<br>: |
| And | : |
| LCMack, LLC<br>4699 N. State Rd 7<br>Suite A-1<br>Tamara, FL 33319 | :<br>:<br>:<br>: |
| And | : |
| David Marks<br>1306 Cambridge Street<br>Philadelphia, PA 19123 | :<br>:<br>: |

1

   And      :
             :
U.S. Bank N.A.      :
12650 Ingenuity Drive   :
Orlando, FL 32826    :
             :
   And      :
             :
EMC Mortgage Corp   :
800 State Highway 121 Bypass :
Lewisville, TX 75067    :
             :
   And      :
             :
John Does 1-10     :
     Defendants. :

## CIVIL ACTION COMPLAINT

2

## I. Preliminary Statement

1. This is an action for an award of attorney's fees and costs, compensatory, statutory, treble and punitive damages, also seeking equitable, injunctive and other relief, for Defendants' "Foreclosure Rescue Scam" and unfair or deceptive acts and practices ("UDAP").

2. Individually, jointly or severally, Defendants are liable to Plaintiff for, but not limited to, the below causes of action and aforesaid remedies, for the reasons stated, which reasons are averred upon information and belief, or will become known in discovery or at trial.

3. Plaintiff reserves the right to rely on the "Discovery Rule" and the Doctrine(s) of Equitable Tolling/Fraudulent Concealment, respectively.

## II. Jurisdiction and Venue

4. Jurisdiction in this Honorable Court is based on federal question and diversity conferred by 28 U.S.C. §1331 and 1332, respectively; supplemental jurisdiction over state law claims is granted by 28 USC §1367.

5. Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principal place of business, is incorporated or does business here, or the subject of this action is situated within this district.

## III. Parties

6. Plaintiff, Yasmin Mack ("Mortgagor"), is an adult individual, and is a citizen currently residing at the above-captioned address.

7. Defendant, Bear Stearns Residental Mortgage Corporation, ("Originating Lender"), is a duly incorporated corporation under and by virtue of the laws of the State of Delaware,

3

maintaining a principal place of business at the above captioned address, at all times material acting as originating lender.

8. Defendant, Foreclosure Solution Specialists Inc. "FSS" ("Mortgage Brokerage"), is a duly incorporated corporation under and by virtue of the laws of the State of Florida, maintaining a principal place of business at the above captioned address.

9. Defendant, John Doe, Lisa Wright ("Wright"), is an adult individual doing business at the above captioned address, is believed a citizen residing in the state above-captioned, at all times material was acting in the course and scope of employment as a principle of and doing business as FSS and LCMack, LLC.

10. Defendant, John Doe, Rebecca Green ("Green"), is an adult individual doing business at the above captioned address, is believed a citizen residing in the state above-captioned, at all times material was acting in the course and scope of employment, doing business as Mortgage Brokerage, as an employee of FSS and LCMack, at all times material acting as Plaintiffs' Loan Officer or Account Executive.

    a. Defendants, Wright & Green, will collectively be referred to as Defendants, Mortgage Brokers.

11. Defendant, LCMack, LLC ("LCMack"), is a limited liability company under and by virtue of the laws of the State of Florida, maintaining a principal place of business at the above captioned address, at all times material acting as Plaintiffs' Mortgage Servicer.

12. Defendant, David Marks ("Marks"), is an adult individual and citizen residing at the above captioned address.

13. Defendant, EMC Mortgage Corp. ("Foreclosing Entity"), is a legal entity or corporation under and by virtue of the laws in the State of Texas, maintaining a principal place of business at the above captioned address, at all times material acting as the loan's Foreclosing Entity.

14. Defendant, U.S. Bank, Inc. ("Assignee"), is a corporation under and by virtue of the laws in the State of Florida, maintaining a principal place of business at the above captioned address, at all times material acting as Plaintiffs' Mortgage Assignee.

15. Defendants, John Does 1-10, are individuals and entities currently unknown but will be substituted when known as affiliated, associated or liable hereunder for the subject loan for the reasons set forth below.

### IV. Operative Facts

#### A. The Loan

16. Plaintiff is a single mother raising two (2) children on her own both of whom suffer from asthma.

17. In or around 2006, Plaintiff's children began to suffer from severe flair-ups of their asthma.

18. As a result of the flair-ups, Plaintiff missed work to take her children to the doctors and hospitals to receive treatment for asthma.

19. Due to Plaintiff missing work she was unable to keep up with her mortgage payments, leading her mortgage servicer, believed to be Wachovia (non-party), to file a foreclosure action against Plaintiff. Phila.C.C.P. December Term 2006, No.: 2268.

20. As a result of the foreclosure action, Plaintiff began receiving solicitations in the mail offering to "help" Plaintiff save her home.

5

21.     One such solicitation was from Defendant, FSS.

22.     Defendant, FSS sent Plaintiff a solicitation stating that it could help Plaintiff keep her home, with several options available to Plaintiff, including loan modification, partial claim, extended repayment plan, and refinance.

23.     The solicitation was signed the "Mortgage Reinstatement Department". (Exh. A).

24.     The solicitation says, in part, "WE WANT TO SAVE YOUR HOME, NOT OWN IT," "WE CAN SAVE YOUR HOME," and "it is IMPERATIVE that you contact us immediately for an appointment." Id.

25.     The solicitation referred to Plaintiff's loan information and contained Wachovia's name on it, leading Plaintiff to believe that FSS was related, a part of or associated with Wachovia.

26.     Based on Plaintiff's desire to keep her home, Plaintiff called the number on the solicitation and was put in contact with Green.

27.     When Plaintiff spoke to Green, Green lead Plaintiff to believe that FSS was associated with Wachovia.

28.     Green did this by answering questions about Plaintiff's loan that Plaintiff believed only the lender and/or servicer of the loan would know.

29.     During this initial conversation, Plaintiff spoke to Green for approximately two to three hours.

30.     Green gave Plaintiff two options, taking out a second mortgage or refinancing.

31.     In both the scenarios, FSS was to act as the lender.

32.     Green advised Plaintiff to refinance and that there was not a lot of time so Plaintiff had to take action quickly.

6

33.     Green further went onto to advise Plaintiff that in order for Green to stop the foreclosure, Plaintiff had to sign a Quitclaim deed.

34.     Greed advised Plaintiff that the Quitclaim deed would not be filed, but torn up after Plaintiff repaid FSS.

35.     Plaintiff was wary of accepting help through a solicitation because she had previously been a victim of an unrelated solicitation, which took $400.00 from Plaintiff with a promise to negotiate with her lender but never did.

36.     As a result of FSS's claimed association with Wachovia led Plaintiff to believe that it was a trustworthy company that would not take advantage of Plaintiff's vulnerable position.

37.     Green and Wright, were employees of FSS.

38.     Green, Wright, and FSS, told Plaintiff that they would refinance her home to prevent the foreclosure from proceeding.

39.     Green told Plaintiff that in order for the refinance to close, Plaintiff would have to sign a deed.

40.     Green assured Plaintiff that deed would not be recorded and would instead be escrowed and returned to Plaintiff after one (1) year of payments.

41.     After the proceeds of the refinance paid off the previous mortgage, Plaintiff was to receive approximately $69,000.00 from the proceeds of the loan via her equity in the property.

42.     Approximately half of that money would be escrowed by Defendant, FSS, to timely pay half of Plaintiff's mortgage payments.

43.     Green and Wright assured Plaintiff that her monthly payments would likewise be cut in half via their refinance.

7

44. Plaintiff's new monthly refinance mortgage payments were to be approximately $460.00 a month, with Plaintiff contributing $230.00 and the other half coming from the funds from the refinance, held in escrow.

45. Plaintiff was told to make her mortgage payments to her refinance lender, Bear Stearns.

46. The remainder of the funds was to be used by Plaintiff, in consultation with Green and Wright, to pay off Plaintiff's other debts.

47. Plaintiff scheduled multiple meetings with Green and Wright as they requested, to discuss reducing Plaintiff's debt for the future.

48. However, neither Green nor Wright showed up for any of the meetings leading Plaintiff to miss more time from work.

49. Plaintiff received all her paperwork via faxes, and returned the signed documents via fax.

50. In or around January 2008, Plaintiff discovered that Wright, Green, FSS and LCMack, had sold and/or otherwise deeded Plaintiff's home to Defendant, Marks when Defendants presented Plaintiff with a bill for rent. (Exh. B).

51. At no point did Plaintiff agree to sell her house to Defendant, Marks.

52. None of the documents Plaintiff received or signed have any reference to Marks.

53. The deed Plaintiff signed was blank, as it was not supposed to be recorded.

54. At all times material, Plaintiff was acting to save her home from foreclosure.

55. Plaintiff never received any funds from the supposed refinance or sale of the premises.

56. Upon information and belief, Marks failed to pay the mortgage and the property is again under threat of foreclosure. Phila. C.C.P. September Term 2008; No. 840.

    C.    <u>Foreclosure</u>

8

57. On or about, September 5, 2008, Foreclosing Entity, on behalf or at the behest of Originating Lender, Assignee, and itself, improperly instituted an Action in Mortgage Foreclosure ("Foreclosure"), as Plaintiff therein, arising from Plaintiff's and/or Marks' alleged default regarding the subject loan documents (Phila.C.C.P., September Term, 2008; No: 840).

58. Upon information and belief, Marks failed to make payments on the mortgage despite the escrow holding Plaintiff's funds.

59. Upon information and belief, Marks, Wright, and Green split Plaintiff's funds from the closing between them.

      D.    <u>Injuries</u>

60. As a result of the foregoing, Plaintiff has suffered injuries including, but not limited to: (1) pain and suffering, including emotional distress and embarrassment; (2) damage to credit rating; (3) financial loss(es), including lost opportunity(ies) or equity; (4) loss or possible loss of the premises; (5) attorneys fees and court costs; and (6) such other and further injuries as will be determined in discovery or at trial, including aggravation of a pre-existing condition(s).

      **V.**    **Causes of Action**

61. Paragraphs above are incorporated by reference as if fully set forth at length herein and below.

62. Plaintiff is a natural person provided with the right to defer payment of debts or to incur payment of debt and defer payment, and the credit offered or extended was primarily for personal, family or household purposes.

63. As a matter of law, Plaintiff and Defendants are "persons."

64. Originating Lender, Foreclosing Entity, and Assignee, regularly extend consumer credit, six (6) or more loans per year, two (2) or more high cost mortgages per year, and one (1) or more of such high cost mortgages through a broker.

65. This loan was a federally related mortgage loan, made by a federally-insured depository lender, is HUD-related, and was intended to be sold on the secondary market or to creditors who make or invest more than one million dollars a year in residentially secured loans.

66. At all times material, Defendants misrepresented and omitted material facts to Plaintiff, including the aforesaid (incorporated herein by reference) and as more further described as following but not limited to: (a) that the loan was beneficial to Plaintiff, when it was not; (b) that their fees and costs were usual and customary, when they were not; (c) that their fees and costs were a part of the finance charge and amount financed, when they were not; (d) that their loans were conventional and fixed, when they were not; (d) that the loan continued characteristics which it did not; (d) that Plaintiff would receive funds, when she did not; and (e) that certain amounts were due and owing, when they were not.

## COUNT I
**Truth-in-Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA")**
*Originating Lender, Assignee and Foreclosing Entity[1]*

67. At all times material, Defendants, in the ordinary course of business, extended and arranged for the extension of consumer credit or offered to extend or arrange for the extension of such credit.

68. In said loan transaction, Plaintiffs did not receive the disclosures required by the Truth-In-Lending Act ("TILA"), 15 U.S.C. §1601, et. seq., and Regulation Z of the Federal Reserve

---

[1] See above definitions.

10