IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YASMIN MACK,<br>    Plaintiff,<br><br>v.<br><br>BEAR STEARNS RESIDENTIAL<br>MORTGAGE CORPORATION,<br>FORECLOSURE SOLUTION<br>SPECIALISTS, INC., LCMACK, LLC,<br>LISA WRIGHT, REBECCA GREEN,<br>SAMUEL PRICE, DAVID MARKS, 1st<br>CONTINENTAL MORTGAGE, U.S.<br>BANK N.A., EMC MORTGAGE CORP.,<br>REGINA J. BROWN, JOHN DOES 1-10.<br>    Defendants. | CIVIL ACTION<br><br><br>NO. 09 - 5370 |

**DuBOIS, J.**  November 30, 2010

# MEMORANDUM

**I.  INTRODUCTION**

Plaintiff Yasmin Mack ("Mack") alleges in this action that she sought help to avoid foreclosure on her Philadelphia home, only to have the house stolen by those who promised to assist her. Presently before the Court are three motions to dismiss Mack's First Amended Complaint: defendant Samuel Price's ("Price") Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted; defendant Regina J. Brown's ("Brown") Motion to Dismiss for Lack of Subject Matter Jurisdiction; and the Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim of defendants Bear Stearns Residential Mortgage Corporation ("Bear Stearns"), U.S. Bank N.A., as Trustee ("U.S. Bank"), and EMC Mortgage

Corporation ("EMC") (collectively, "the EMC Defendants").  For the reasons that follow, the EMC Defendants' motion to dismiss is granted in part and denied in part, and the motions to dismiss filed by Brown and Price are denied.

## II. BACKGROUND

Mack faced impending foreclosure on her home in Philadelphia in 2006 when she received a solicitation from defendant Foreclosure Solution Specialists, Inc. ("FSS"), offering to help keep her in her home.  (Am. Compl. ¶¶ 22-25.)  When she called FSS, Mack spoke to defendant Rebecca Green ("Green"), who led her to believe FSS was associated with Mack's then-current mortgagee, Wachovia.  (Id. ¶¶ 30-31.)  Green encouraged Mack to refinance her home through FSS.  (Id. ¶¶ 35-37.)  She also told Mack that Mack first had to sign a quitclaim deed, which would not be recorded but instead torn up after Mack repaid FSS.  (Id. ¶¶ 38-39.)

On June 4, 2007, defendant Lisa Wright ("Wright"), a principal in FSS, faxed to Mack a series of documents prepared by Price, FSS' attorney.  Wright told Mack she had to have the documents notarized for the refinancing to go forward.  (Id. ¶¶ 40-43.)  Green then told Mack she had to sign another deed – also not to be recorded but rather escrowed and returned to Mack after she made a year of payments on her new loan.  (Id. ¶ 44.)

Under the proposed terms of the refinancing, Mack would receive a portion of the $69,000 in equity she had in the property, while the remainder would be escrowed and used to pay half of her mortgage payments for a year.  (Id.)  Mack was told to make mortgage payments to her refinance lender, Bear Stearns.  (Id.)

Brown, a notary and the closing agent for the transaction, met Mack on August 23, 2007

at Mack's sister's house. (Id. ¶ 42 at 8.)[1] Mack initially refused to sign any of the closing documents because they identified her as the "seller." (Id. ¶ 43 at 8.) Brown assured Mack that FSS was a legitimate organization. (Id. ¶¶ 44-45 at 8.) Brown added that Mack should write "Distribute only to Yasmin Mack" next to any reference in the documents to distributions that were to be made to the seller. (Id. ¶ 50.) Mack then signed the documents. (Id.)

Several days later, a check was issued to Price for $65,434.08 based on a HUD-1 settlement sheet sent to the settlement agent, Netco. (Id. ¶ 51.) The fax was forged by defendant 1st Continental Mortgage ("1st Continental") at Price's direction. (Id. ¶ 52.)

After closing, Mack did not receive any funds from the transaction. (Id. ¶ 55.) She attempted to schedule meetings with Green and Wright to figure out what was happening, but neither Green nor Wright showed up for any of the meetings. (Id. ¶¶ 57-58.)

In January 2008, Mack received a bill demanding she pay rent to the purported owner of the house, defendant David Marks ("Marks"). Mack subsequently discovered that defendants Wright, Green, FSS and LCMack, LLC ("LCMack") had sold and/or deeded her home to Marks. (Id. ¶¶ 60.)[2] Price, Marks, Wright, Brown and Green converted and shared the money Mack was supposed to have received from closing. (Id. ¶ 69.)

Marks failed to pay the mortgage, and the property was foreclosed upon and sold at a sheriff's sale in June 2009. (Id. ¶ 67.) At the time, defendant U.S. Bank was the assignee of the mortgage originated by Bear Stearns. (Id. ¶¶ 7, 16.) Defendant EMC acted as the loan's

---

[1] Because of what is likely a typographical error, Mack's complaint contains two each of paragraphs 42-44.

[2] LCMack is identified in the complaint as "Plaintiffs' [sic] Mortgage Servicer." (Am. Compl. ¶ 11.)

foreclosing entity.  (Id. ¶ 15.)

Mack initiated this action on November 13, 2009 and filed her First Amended Complaint on July 27, 2010.  In the Amended Complaint, Mack asserts (1) a claim for unjust enrichment against the EMC Defendants; (2) a claim against FSS, Wright and Green for violating the Pennsylvania Credit Services Act, 73 Pa. Cons. St. § 2182, et seq.; (3) a claim against all defendants for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1, et seq.; and (4) a claim against FSS, Wright and Green for violating the federal Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, et seq.

### III.  THE EMC DEFENDANTS' MOTION

The EMC Defendants assert in their motion to dismiss that the Amended Complaint fails to state a claim for a violation of UTPCPL or unjust enrichment.  Mack concedes the UTPCPL claim as to the EMC Defendants.  (Pl.'s Resp. ¶¶ 11-25.)  Therefore, the Court grants the motion as it pertains to the UTPCPL claim.

Regarding unjust enrichment, the EMC Defendants argue that the Amended Complaint fails to state a claim because it does not allege Mack directly conferred a benefit on the EMC Defendants or that the EMC Defendants had actual or constructive notice of the scam.  (EMC Defs.' Mot. to Dismiss ¶¶ 28-47.)  Mack argues that the benefit conferred on the EMC Defendants was the interest-bearing loan (mortgage) they received.  (Mem. of Law. in Support of Resp. at 9.)  Mack further argues that the EMC Defendants had notice of the scam through various facts outlined in the Amended Complaint.  (Id. at 10-11.)  The Court concludes that Mack has stated a claim for unjust enrichment, and denies the EMC Defendants' Motion to Dismiss as to the unjust enrichment claim.

A. Legal Standard: Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint – the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

B. Analysis

In Pennsylvania, a claim for unjust enrichment has three elements: "[1] benefits

conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993) (quotation marks and citations omitted), aff'd 637 A.2d 276 (Pa. 1994). The most important element is "whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff." Stoeckinger v. Presidential Fin. Corp. of Del. Valley, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (quoting Styer, 619 A.2d at 350) (emphasis in original). Whether a third party that receives the benefits of a voidable transaction can be held liable for restitution depends on whether the third party paid value for the property and took without notice of the facts making restitution proper. MacKubbin v. Rosedale Mem'l Park, Inc., 435 Pa. 374, 376-77 (1969); see also Restatement (First) of Restitution § 13.

The EMC Defendants aver that they cannot be held responsible under a theory of unjust enrichment because, inter alia, they had no notice of the fraud allegedly perpetrated by the other defendants.[3] However, as the Pennsylvania Supreme Court has held:

> It is well settled that purchasers and mortgagees of real estate are affected not only by matters of which they had actual knowledge and by what appeared in the office of the recorder of deeds and in the various courts of record whose territorial jurisdiction embraced the land in dispute, but as well "by what they could have learned by inquiry of the person in possession and of others, who they had reason to believe, knew of facts which might affect title."

---

[3] The EMC Defendants also assert that Mack has failed to confer a benefit on them. Rather, they argue, if anyone conferred a benefit on them, it was Marks. The EMC Defendants' argument is unpersuasive. There would be no need for a special rule to protect an innocent purchaser if the indirect nature of the benefit conferred were, by itself, enough to defeat a claim of unjust enrichment. See Restatement (First) of Restitution § 13.

Sidle v. Kaufman, 345 Pa. 549, 557, 29 A.2d 77, 81 (1942) (quoting Salvation Army Inc. Trs. v. Lawson,143 A. 113, 114 (1928)) (emphasis added). The unambiguous language of Sidle mandates that a purchaser of real property is on notice of facts he could have learned through inquiry of the individual in physical possession of the property. See In re Fowler, 425 B.R. 157, 199 (Bankr. E.D. Pa. 2010) ("[A] long line of Pennsylvania courts have held that, as part of the duty to exercise ordinary diligence in the purchasing process, a buyer of real property is obliged to ask those in physical possession of property (who are not also the current record titleholders) if they have some title to, or interest in, the occupied property that is adverse to the prospective buyer's title. Pennsylvania imposes the same duty of inquiry on a mortgagee.") (citing to numerous Pennsylvania state court decisions) (emphasis in original).

In this case, Mack remained in the house after the transaction with Marks. Had Bear Stearns inquired of Mack, it would have learned that she never intended to sell her house to Marks and did not even know who he was. Therefore, the EMC Defendants cannot claim protection from equitable remedies on the basis that they had no notice of the fraudulent transaction, and the Motion to Dismiss is denied as to the unjust enrichment claim.

## IV.    BROWN'S MOTION

Brown argues in her motion to dismiss that the Court lacks subject-matter jurisdiction over the claim that she violated the UTPCPL. After correctly noting that the Court lacks both federal question and diversity jurisdiction over the claim, Brown asserts that the Court lacks supplemental jurisdiction as well.

Brown's argument is twofold. First, Brown avers that the claim against her is too tenuously related to the CROA claim – the only one over which the Court has original subject-

matter jurisdiction. (Def. Brown's Mot. to Dismiss ¶ 29.) Second, Brown contends that the UTPCPL claim is much more substantial than the "narrow federal [CROA] claim." (Br. of Def. Brown in Support of Mot. to Dismiss at 7-8.) The Court concludes for the reasons that follow that it has supplemental jurisdiction over the UTPCPL claim and denies Brown's motion.

A. <u>Legal Standard: 28 U.S.C. § 1367</u>

Under 28 U.S.C. § 1367(a), a district court presented with a federal question claim may exercise supplemental jurisdiction over state-law claims if they are "so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." The Third Circuit has interpreted § 1367 to mean that "a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." <u>De Asencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 308 (3d Cir.2003) (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966)).

"The test for a 'common nucleus of operative facts' is not self-evident" and involves a "fact-specific" inquiry into the details of the individual case. <u>Lyon v. Whisman</u>, 45 F.3d 758 (3d Cir. 1995). The facts used to prove the state and federal claims need not be precisely the same. <u>See</u> <u>Dimensional Music Publ'g, LLC v. Kersey</u>, 448 F. Supp. 2d 643, 652 (E.D. Pa. 2006).

Even if a court has supplemental jurisdiction under § 1367(a), it may decline jurisdiction over the state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

>     (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The determination of whether state-law claims "substantially predominate" over federal claims calls for a qualitative, not quantitative, analysis. Borough of West Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995) The Third Circuit has cautioned that § 1367(c)(2) is a "limited exception" to § 1367(a) and should be invoked only where there is "an important countervailing interest to be served by relegating state claims to the state court." Id.

 B. Analysis

Contrary to Brown's arguments, the Court has supplemental jurisdiction over the claim against Brown. The UTPCPL claim against Brown and the CROA claim against FSS, Wright and Green both are based on the theory that FSS and various individual defendants swindled Mack out of her home. While Mack must prove separate elements to prevail under each statute, the underlying factual material used to prove each claim will be largely the same. Thus, the "common nucleus of operative fact" standard is satisfied.

Moreover, there is no basis for the Court to decline jurisdiction under § 1367(c). The only potentially applicable exception is § 1367(c)(2), which gives the Court discretion not to hear a state-law claim if it "substantially predominates over the claim or claims over which the district court has original jurisdiction." This exception, however, is narrow, only to be invoked where "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." Borough of West Mifflin, 45 F.3d at 789.

Brown alleges that the state-law claims in this case predominate because the allegations in the CROA claim "consist of three paragraphs with two subparts," while the UTPCPL claim

"consists of nine paragraphs with twenty-three (23) separate subparts." (Br. of Def. Brown in Support of Mot. to Dismiss at 7-8.) But the length of the pleadings is not determinative. Rather, the Court must evaluate whether the state-law claim substantially predominates "(1) in terms of proof, (2) in terms of the comprehensiveness of the remedy sought, and (3) in terms of the scope of the issues raised." Mazurkiewicz v. Doylestown Hosp., 223 F. Supp. 2d 661, 667 (E.D. Pa. 2002).

In this case, the proof relating to the state and federal claims will be largely the same. The remedy for both the state and federal claims is damages for the common injuries caused by both the state and federal violations. And Brown does not assert that the state issues "are more important, more complex, more time consuming to resolve, or in any other way more significant than their federal counterparts." Borough of West Mifflin, 45 F.3d at 790. Thus, the Court will not decline jurisdiction under § 1367(c)(2).

The Court concludes that it has supplemental jurisdiction over the claim against Brown and denies her Motion to Dismiss.

## V. PRICE'S MOTION

Price, an attorney appearing pro se, argues in his motion to dismiss that the claim against him should be dismissed because he was simply an "unsuspecting Trustee" with whom closing funds from the sale of Mack's home were deposited. (Def. Price's Mot. to Dismiss ¶ 9.) He asserts that he never profited from the transaction. (Id. ¶ 14.)

Price's motion must be denied because it attacks the truth of Mack's factual assertions and not their legal sufficiency. For purposes of a motion to dismiss, "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the

plaintiff can prove those facts or will ultimately prevail on the merits." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). The Court is not in a position to determine, on the basis of the Amended Complaint alone, whether Price was an "unsuspecting Trustee" or an active participant in a scheme to defraud Mack. Therefore, Price's motion to dismiss is denied.

## VI. CONCLUSION

For the foregoing reasons, the EMC Defendants' motion to dismiss is granted in part and denied in part – only the UTPCPL claim is dismissed – and Brown's and Price's motions to dismiss are denied. An appropriate order follows.